IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)   SHANE SMALL, | ) |
| | ) |
|            Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 20-CV-00229-JFH-JFJ |
| | ) |
| (1) CLASSIC TULSA C, LLC, a foreign | ) |
| Limited Liability Company, | ) |
| | ) |
|            Defendant. | ) |

### CLASSIC TULSA C, LLC'S MOTION FOR
### SUMMARY JUDGMENT AND BRIEF IN SUPPORT

**ATKINSON, HASKINS, NELLIS,
BRITTINGHAM, GLADD & FIASCO**
A Professional Corporation
Jennifer R. Annis #17741
Carol J. Allen, OBA #18255
1500 ParkCentre
525 South Main
Tulsa, OK 74103-4524
Telephone: (918) 582-8877
Facsimile: (918) 585-8096
**Attorneys for Defendant**

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................................4

III. ARGUMENTS & AUTHORITIES .......................................................................................10

    A. Summary Judgment Standard ........................................................................................10

    B. Plaintiff's FMLA Interference Claim Fails as a Matter of Law ......................................11

    C. Plaintiff's FMLA Retaliation Claim Fails as a Matter of Law ........................................14

IV. CONCLUSION .....................................................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................11
*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869 (10th Cir. 2004) ................................................12, 13
*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282 (10th Cir. 2007) .................................11, 15
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ............................................................................11
*Dalpaiz v. Carbon Cnty, Utah*, 760 F.3d 1126, (10th Cir. 2014) .......................................11, 12, 14
*Drexel on the Park, Ltd. Liab. Co. v. Statewide Renovation & Supplies, Inc.*, 2016 WL 7442660
(W.D. Okla. 2016) .........................................................................................................................11
*Edwards v. SouthCrest, LLC*, 2012 WL 826963 (N.D. Okla. Mar. 9, 2012) ................................12
*Gunnell v. Utah Valley State College*, 152 F.3d 1253 (10th Cir. 1998) .......................................12
*Janczak v. Tulsa Winch, Inc.*, 621 Fed. Appx. 528 (10th Cir. 2015) .......................................12, 14
*Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) ..........................16
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ..........................................................15
*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164(10th Cir. 2006) .............................14
*Robert v Bd. of Cnty. Comm'rs*, 691 F.3d 1211 (10th Cir. 2012) .................................................15
*Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987 (10th Cir. 2011) .............................................12

### STATUTES

Fed. R. Civ. P. 56 ............................................................................................................................10
29 U.S.C. § 2601 .............................................................................................................................11
29 U.S.C. § 2612 .............................................................................................................................11
29 U.S.C. § 2615 .................................................................................................................11, 12, 14

**COMES NOW** Defendant Classic Tulsa C, LLC ("Classic Tulsa"), by and through its attorneys of record, Carol J. Allen and Jennifer R. Annis of Atkinson, Haskins, Nellis, Brittingham, Gladd & Fiasco, and, pursuant to Fed. R. Civ. P. 56 and LCvR 56.1, hereby respectfully submits its Motion for Summary Judgment on all of Plaintiff's remaining claims against it. Plaintiff's termination from Classic Tulsa was not related in any way to his alleged request for leave under the Family and Medical Care Act ("FMLA"). Therefore his interference and retaliation claims fail as a matter of law, and Classic Tulsa is entitled to an order granting summary judgment in its favor on Plaintiff's claims. Classic Tulsa submits the following Brief in Support.

## BRIEF IN SUPPORT

**I.     INTRODUCTION**

This case arises from Plaintiff's allegations that he was wrongfully terminated from his employment with Classic Tulsa[1] for requesting leave under the Family and Medical Leave Act. Plaintiff was employed with Classic Tulsa as a finance manager at the Mark Allen Chevrolet dealership. Plaintiff was transferred from the Mark Allen Buick dealership to the Mark Allen Chevrolet dealership in May of 2017 due to excessive absenteeism at the Buick dealership. Plaintiff missed more than forty days of work between May and December of 2017 and more than 130 days of work in 2018. Classic Tulsa's attendance policy states that any more than two absences per quarter is considered chronic absenteeism and is cause for termination. Plaintiff was warned by various supervisors at Classic Tulsa that his attendance record was problematic. Plaintiff gave numerous reasons for his absences other than medical reasons, including alleged home repairs, his

---

[1] Defendant Classic Tulsa C, LLC, is also known as "Mark Allen Chevrolet." Classic Tulsa BG, LLC, is a separate legal corporation and is also known as "Mark Allen Buick." Plaintiff has been employed with both entities, but his claims in this lawsuit are against Classic Tulsa C, LLC (aka "Mark Allen Chevrolet").

wife being scammed by someone impersonating a country singer, his daughter's friend's sister overdosing, and his daughter being sexually assaulted.

Plaintiff claims he requested FMLA leave in November and December of 2018. Plaintiff underwent surgery on November 21, 2018, for diverticulitis. Plaintiff was cleared by his doctor to return to work on December 17, 2018, and did return to work on that day. On December 26, 2018, Plaintiff's mother was allegedly injured in a pitbull attack. Plaintiff was in contact with his supervisor, Adam Brady, via text message about his mother's injuries, but at no time did he request FMLA leave to care for her. In fact, contrary to any such claim, he stated that his daughter was coming into town to care for his mother specifically so he could get back work.

There is no written record of Plaintiff ever requesting FMLA leave in either of these instances, and Plaintiff admitted that he never submitted any written request for FMLA leave. The Employee Handbook required Plaintiff to give as much notice as possible of his need to take leave and also required Plaintiff provide written documentation by a medical doctor of the need to take FMLA leave. Plaintiff did not comply with this policy. Prior to his employment with Classic Tulsa, Plaintiff had taken FMLA leave at least four separate times at a previous place of employment. Plaintiff admitted that he knew FMLA leave required physician documentation, and that he did not provide any to Classic Tulsa.

On January 2, 2019, Plaintiff was terminated from Classic Tulsa due to excessive absenteeism. Plaintiff stated that at the time of his termination, he believed he was fired due to a customer complaint that he had handled the day before he was terminated. At his deposition, Plaintiff testified that when Mr. Brady, advised him of his termination, he told Plaintiff that it was because he had missed too much work. Plaintiff also admitted that prior to this, various supervisors had advised him that his attendance record was problematic.

After his termination with Classic Tulsa, Plaintiff eventually applied for a job with South Pointe Honda. Plaintiff verified that all the information he provided on the application was true and complete. However, he misrepresented facts about his previous employment several times on the verified application. He stated that he left Classic Tulsa because he had major surgery, and also stated that he gave one month's notice before he left Classic Tulsa. When asked if he had been involuntarily terminated from any previous places of employment, Plaintiff did not include his termination from Classic Tulsa in his answer. Thus, according to Plaintiff's own admission on his verified application, Plaintiff voluntarily left Classic Tulsa. Nowhere on the application does Plaintiff state that he was terminated for requesting FMLA leave.

Plaintiff sued Classic Tulsa for interference and retaliation under the FMLA on May 4, 2020. Though Plaintiff pled interference and retaliation as a single cause of action, they are actually two separate and distinct causes of action. Interference claims are brought when an employer allegedly refuses to allow an employee to take FMLA leave or takes an adverse employment action against the employee while the employee was on FMLA leave. As will be explained below, Classic Tulsa has shown that Plaintiff would have been terminated regardless of his alleged FMLA leave requests due to his excessive absenteeism. It is undisputed Plaintiff was excessively absent well before he allegedly requested FMLA leave. According to the Employee Handbook his absenteeism was a ground for termination, and Plaintiff was counseled numerous times on the fact that his attendance record was problematic by various supervisors. Therefore, Classic Tulsa is entitled to judgment as a matter of law on Plaintiff's interference claim.

On the other hand, retaliation claims are generally reserved for adverse employment actions that occur after an employee returns from FMLA leave. Plaintiff's alleged fact pattern does not fit into an FMLA retaliation claim because Plaintiff never took FMLA leave. Additionally, under a

3

retaliation theory, the burden is on Plaintiff to show that Classic Tulsa's legitimate, nondiscriminatory reason for his termination—excessive absenteeism spanning the entirety of his employment with Classic Tulsa—was merely a pretext. Plaintiff cannot make such a showing. Therefore, Classic Tulsa is entitled to an order granting it summary judgment on Plaintiff's retaliation claim.

**II.   STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. Plaintiff filed this lawsuit on May 4, 2020, in Tulsa County Case No. CJ-2020-1497. Plaintiff made claims against Classic Tulsa for Interference with FMLA rights, Retaliation in Violation of the FMLA, and Intentional Infliction of Emotional Distress. [Dkt. #2-1, Petition].

2. Classic Tulsa removed the case to this Court on May 26, 2020, under federal question jurisdiction. [Dkt. #2, Notice of Removal].

3. Plaintiff voluntarily dismissed his intentional infliction of emotional distress claim on September 22, 2020. [Dkt. #22].

4. Plaintiff was employed with Classic Tulsa from May of 2017 to January 2, 2019.

5. Plaintiff was an at-will employee of Classic Tulsa, and could be terminated for violation of company "policy, safety rules and practices, or for any reason." (Employee Handbook, pertinent portions attached as Exhibit 1, §79).

6. Plaintiff was terminated for chronic absenteeism on January 2, 2019. (Termination Report, attached as Exhibit 2).

7. Classic Tulsa's Employee Handbook states: "Two absences per quarter will be considered excessive absenteeism." (Ex. 1, §51).

8. Further, the Employee Handbook states: "If an emergency, illness, or other situation occurs, which will prevent you from reporting to work or reporting to work on time, you must give

your supervisor as much advance notice as possible, no later than the start of your scheduled work time. . . . Absenteeism or tardiness without valid reason and proper notification is cause for termination." (Ex. 1, §50).

9. Plaintiff admits that he was given a copy of the Employee Handbook. (Plaintiff's Responses to Requests for Admissions, attached as Exhibit 3).

10. One of the specified reasons an employee can be terminated by Classic Tulsa is for "[r]epeated tardiness, unexcused absence, or abuse of medical leave." (Ex. 1, §81). Employees were advised that "[f]requent absenteeism, and tardiness (excused or unexcused) will convince your supervisor that you are not committed to your job and you will be subject to termination." (Ex. 1, §52).

11. Plaintiff admits that he was absent more than twice per quarter during his employment with Classic Tulsa:

> Q: Do you see Section 51, Absences and Non-Paid Time Off Policy?
>
> A: Yes.
>
> Q: Do you see, "Two absences per quarter will be considered as excessive absenteeism"? Do you see that, sir?
>
> A: Yes.
>
> Q: And you certainly had more than two absences per quarter during your work period at Mark Allen; correct?
>
> A: Correct.

(Deposition of Shane Small, attached as Exhibit 4, 120:16-25).

12. When asked if he missed the following days of work, Plaintiff either confirmed that he missed those days, or stated that he did not remember: five days in May 2017; three days in June 2017; five days in September 2017; nine days in October 2017; nine days in November 2017;

5

fifteen days in December 2017; eleven days in January 2018; twelve days in February 2018; five days in March 2018; six days in April 2018; seven days in May 2018; seven days in June 2018; thirteen days in August 2018; thirteen days in September 2018; nine days in October 2018; sixteen days in November 2018; and nineteen days in December 2018. At no point did Plaintiff deny that he missed those days of work. (Ex. 4, 88:2-93:9).

13. When asked if he missed 134 total days of work in 2018, Plaintiff did not deny it. Rather, he stated that he would have to look at the dates to confirm.

> Q: So you missed 134 working days at Mark Allen Chevrolet in 2018 . . . Do you agree or disagree?
>
> A: I'd have to look at the dates.

(Ex. 4, 93:14-19).

14. Plaintiff had been advised by various supervisors that his attendance record was problematic.

> Q: Did Mr. Allen ever talk to you about your being absent from work too many times while you worked at Mark Allen Chevrolet?
>
> A: I have had different conversations. He'd told me before "You need to be here."

(Ex. 4, 87:21-25).

\*\*\*

> Adam: Shane, if it's important to take off for her, than [sic] it's ok. Keep in mind that the reputation you have currently is that you miss a lot of work. Just a thought to be mindful of that in the future, cool?

(Text Message from Adam Brady, attached as Exhibit 5).

\*\*\*

> Adam: Shane, we would like to know ahead of time when you have dr appointments please, not the morning of when you don't show up. How are your injuries?

(Text Message between Plaintiff and Adam Brady, December 26, 2018, attached as Exhibit 6).

6

15. He was also advised by his previous supervisor at Mark Allen Buick, Billy Caperton, that his attendance record was problematic.

> Q: And did Billy Caperton at that time, sir, ever counsel you on being absent too much at work?
>
> A: One time he came into the finance office and sat down in there and told me that, you know, I need to try to be there; if I'm sick, that I'm sick, but I need to try to be there.

(Ex. 4, 59:10-15).

16. In fact, Mr. Caperton, wanted to fire Plaintiff due to excessive absenteeism, but Plaintiff was ultimately transferred to Mark Allen Chevrolet instead.

> Q: Okay. Do you recall that Mr. Caperton wanted to terminate you rather than transfer you to the Chevrolet because you were excessively absent?
>
> A: Yes

(Ex. 4, 59:22-25).

17. Plaintiff gave a variety of reasons for missing work at Classic Tulsa other than for medical reasons, including home repairs, his wife being scammed by someone impersonating a country singer, his daughter's friend's sister overdosing, and his daughter being sexually assaulted. (Ex. 4, 152:4-153:21).

18. Plaintiff claims in his discovery responses that he requested FMLA leave for two separate incidences: (1) when he had surgery for diverticulitis in November of 2018 and (2) when his mother was attacked by a pitbull in December of 2018. (Plaintiff's Responses to Discovery, attached as Exhibit 7).

19. Plaintiff had surgery on November 21, 2018. (Ex. 4, 93:10-13).

20. Plaintiff was released by his doctor to return to work on December 17, 2018. (Return to Work Form, attached as Exhibit 8).

21. Plaintiff did return to work on December 17, 2018. [Dkt. #1, ¶20].

22. On December 26, 2018, Plaintiff missed work for a doctor's appointment after he allegedly fell down some stairs. Plaintiff advised that he was originally planning on coming to work after the appointment, but ultimately was not able to. (Ex. 6).

23. Plaintiff's mother was then allegedly injured during a pitbull attack on December 26, 2018. [Dkt. #1, ¶21].

24. Plaintiff was in contact with Mr. Brady via text message about his mother's injuries, but at no point requested FMLA leave to care for her. In fact, Plaintiff advised that his daughter was coming into town to help care for his mother so that he could return to work. (Text Messages between Plaintiff and Adam Brady, December 27-29, 2018, attached as Exhibit 9).

25. In his deposition, he testified that he did not request FMLA leave related to the incident in which his mother was allegedly injured. (Ex. 4 103:13-23). Eventually, he testified that he had been confused about the dates and he actually did request FMLA leave in December to take care of his mother. (Ex. 4, 106:13-20).

26. With regard to FMLA leave, the Employee Handbook states:

> In the event of a serious illness to the employee or his/her child, spouse, or parent, creating a need for unforeseeable family or medical leave, the employee should provide us with notice, as soon as practicable, of any needed time off, and a written doctor's certification indicating the expected duration and nature of the illness, particularly as it relates to the employee's ability to come to work or the need for the employee's presence at home to care for a seriously ill family member.

(Ex. 1, §56).

27. The Employee Handbook further states: "Employees shall be required to give advance notice in the event of a foreseeable medical treatment." (Ex. 1, §56).

28. Plaintiff had taken FMLA leave at previous jobs several times before, and was familiar with similar policies related to notice and documentation.

> Q: Do you recall having to complete a lot of paperwork when you requested the FMLA leave?
>
> A: Yes.
>
> Q: You had to get certifications from doctors; correct?
>
> A: Correct.
>
> \*\*\*
>
> Q: But you took FMLA leave at least four times at South Pointe; correct?
>
> A: Sounds right.

(Ex. 4, 37:22-38:2; 38:10-12).

29. On or about August 14, 2019, approximately eight months after being terminated from Classic Tulsa, Plaintiff applied for a job at South Pointe Honda.[2] On his job application, the information on which he certified was true and complete, he stated that he left his employment with Classic Tulsa because he had major surgery. (Application for Employment, attached as Exhibit 10, p. 1). Nowhere on the application did he state that he was terminated for requesting FMLA leave.

30. In fact, when asked if he had ever been terminated or asked to resign from a job, he did not include his termination from Classic Tulsa in his answer. (Ex. 10, p. 2). Further, he falsely represented that he gave one month's notice before he left Classic Tulsa. (Ex. 10, p. 1).

31. At the time of his termination, Plaintiff did not believe he was being terminated for requesting FMLA leave.

> Q: And so when you were fired, you believed you were being fired because you asked for FMLA leave?

---

[2] As stated above in Fact Number 28, Plaintiff took FMLA leave while he was employed at South Pointe Honda. Plaintiff was previously employed at South Pointe from 2012 to 2016. After his termination from Classic Tulsa, he applied to work at South Pointe Honda again in the summer of 2019.

9

> A: No. I believe I was – I believed I was being fired because an employee – or a customer had called in the day before on a car deal that they had spoke about in the meeting the day before, one they had done when I wasn't there. . . . Rhonda came to me and said that there was a call on the line and that it was these customers and that no one else was here except for Adam, and she wanted to know if I could answer. The lady was real hot and upset. So I took the call, I talked to the lady . . . . [O]nce I got off the phone with her, I went and talked to Adam and then tried to give him a heads up . . . . I thought everything was fine, I left and then I get a call the next morning, and that's what I just assumed it was over was that incident at the time is what I thought it was over.

(Ex. 4, 113:11-116:12).

32. When asked at what point he began to believe that he was terminated for requesting FMLA leave, Plaintiff did not detail why he thought he was terminated for requesting leave. Rather, he confirmed that his supervisor advised him he was terminated due to his excessive absenteeism.

> Q: Sure. When did you come under the belief that you were fired from Mark Allen Chevrolet due to requesting FMLA leave?
>
> A: I keep thinking it was when I brought my demo back. When I brought my demo back, I took the keys and my stuff – my keys, my demo, all my stuff and everything that I had to turn in back to Adam and walked into his office. . . . . So we walked back over into that office there and I gave him my keys and everything. And he told me that I shouldn't have a problem getting a job, that . . . I shouldn't have a problem getting a job, that I'm good right there, that I just needed to – *you know, if I wouldn't have just missed so much – How did he say it. He just told me that I had been good, that I had done a good job when I was there, but I had just missed too much is what he had said*.

(Ex. 4, 119:7-120:1(emphasis added)).

### III. ARGUMENTS & AUTHORITES

#### A. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548 (1986). "In short, the Court must inquire 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Drexel on the Park, Ltd. Liab. Co. v. Statewide Renovation & Supplies, Inc*., 2016 WL 7442660 at *5 (W.D. Okla. 2016) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

### B. Plaintiff's FMLA Interference Claim Fails as a Matter of Law

The Family and Medical Leave Act "entitles employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C.A. § 2601(b)(2). Section 2612 entitles eligible employees to twelve total work weeks of leave during any twelve-month period for a qualifying reason. Employers are prohibited from interfering with an employee's right to take FMLA leave. 29 U.S.C.A § 2615.

In order to establish a claim of FMLA interference under § 2615(a), an employee has the burden of showing: (1) he was entitled to FMLA leave; (2) an adverse action by his employer interfered with his right to take FMLA leave; and (3) the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Dalpaiz v. Carbon Cnty, Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014). The second element of an interference claim is established when the employee shows that he "was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1286 (10th Cir. 2007). "[A]n interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Dalpaiz*, 760 F.3d at 1132. While

Classic Tulsa denies that Plaintiff ever requested FMLA leave, or that it ever denied any such requests, the undisputed material facts are clear that Plaintiff cannot establish the third element of an interference claim.

Section 2615(a)(1) "is not a strict liability statute, and the employer is not necessarily liable under the FMLA anytime it fires an employee who has requested or is on FMLA leave." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011). "If an employee demonstrates the first two elements, the employer bears the burden of demonstrating that the adverse decision was not related to the exercise of the employee's FMLA rights." *Janczak v. Tulsa Winch, Inc.*, 621 Fed. Appx. 528, 531 (10th Cir. 2015). "In meeting this burden, the employer is not required to show that the adverse employment decision and the employee's FMLA request are completely and entirely unrelated." *Dalpaiz*, 760 F.3d at 1132. That is, an "indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877-78 (10th Cir. 2004).

An employee's "request for an FMLA leave does not shelter [him] from the obligation, which is the same as that of any other . . . employee, to comply with [the employer's] employment policies, including its absence policy." *Bones*, 366 F.3d 869, 878l. "Under FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work. . . . [A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998). Specifically, "[a]n employee with continuous problems of tardiness and absenteeism is not protected from termination merely by requesting FMLA leave." *Edwards v. SouthCrest, LLC*, 2012 WL 826963, *4 (N.D. Okla. Mar. 9, 2012).

Plaintiff allegedly requested FMLA leave in both November and December of 2018. Regardless of the fact that Classic Tulsa denies Plaintiff ever requested FMLA leave, Plaintiff's absenteeism was an issue long before November and December of 2018. In fact, it had been an issue in a previous job he held with Classic Tulsa's Buick division. Plaintiff admits he was advised that his absenteeism was problematic by various supervisors. Plaintiff missed more than forty days of work between May and December of 2017. He also missed over 130 days of work in 2018, nearly eighty of those days were missed before November of 2018. Additionally, Plaintiff, on several occasions, gave reasons for his absences or tardiness that would not qualify for FMLA leave. For example, Plaintiff missed work due to alleged home repairs, his wife being scammed by someone impersonating a country singer, his daughter's friend's sister overdosing, and his daughter being sexually assaulted. The undisputed facts establish Plaintiff had "continuous problems of tardiness and absenteeism." Plaintiff's attendance record was contrary to Classic Tulsa's attendance policy, and that is why he was terminated. Prior to termination, it is undisputed Plaintiff had been counseled multiple times that his attendance record was problematic.

Finally, Classic Tulsa's Employee Handbook is clear that when requesting FMLA leave, the employee is required to give as much notice as possible and provide documentation from a doctor that either the employee's medical condition or an employee's family member's medical condition required the employee to take a leave of absence from work. Plaintiff admits that he never requested FMLA leave in writing and that he provided no written documentation from a medical doctor confirming he needed to take FMLA leave in either instance. Plaintiff's failures were despite the fact that he had requested FMLA leave at a prior place of employment and knew what the request entailed, and had been given the Classic Tulsa Employee Handbook which outlined the required steps in detail. Thus, Plaintiff did not comply with company policies. As

stated above, a request from FMLA leave does not shield an employee from adverse employment actions related to the employee's failure to follow company policies.

Even if Plaintiff requested FMLA leave, which Classic Tulsa denies, requests for FMLA leave do not shield Plaintiff from termination resulting from preexisting and chronic problems with absenteeism and tardiness. Because the undisputed facts demonstrate that Plaintiff would have been terminated regardless of the alleged requests for FMLA leave, Classic Tulsa is entitled to summary judgment in its favor on Plaintiff's interference claim.

C. **Plaintiff's FMLA Retaliation Claim Fails as a Matter of Law**

The first claim for relief in Plaintiff's Petition is for "Interference and Retaliation in Violation of FMLA." However, interference and retaliation under the FMLA are separate causes of action. Retaliation claims arise under § 2615(b). Interference claims and retaliation claims "are separate and distinct theories that require different showings, differ with respect to the burden of proof, and differ with respect to the timing of the adverse action. *Dalpaiz*, 760 F.3d at 1131. "Because of these differences, it is generally easier for a plaintiff to prevail under an interference theory than a retaliation theory." *Janczak*, 621 Fed. Appx. at 532. Retaliation claims are analyzed under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Janczak*, 621 Fed. Appx. at 534. Thus, the plaintiff "bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). To establish a prima facie case, a plaintiff must show that he (1) engaged in a protected activity; (2) his employer took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection

between the protected activity and adverse action. *Campbell*, 478 F.3d at 1287.

First, Plaintiff's alleged facts do not fit into a claim for retaliation, rather they fit more appropriately into a claim for interference, which was fully addressed in the subsection above. "In the typical retaliation claim, the employee successfully took FMLA leave, was restored to [his] prior employment status, and was adversely affected by an employment action based on incidents post-dating [his] return to work." *Robert v Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1219 n.6 (10th Cir. 2012). In this case, Plaintiff, by his own admission, did not take FMLA leave. For that reason alone, there is no evidentiary support for a retaliation claim. Additionally, he alleges that he was terminated because he requested FMLA leave, not due to incidents post-dating his return to work. Thus, Plaintiff's claim is an interference claim, not a retaliation claim. Classic Tulsa is entitled to summary judgment on Plaintiff's attempted claim of retaliation. Additionally, Plaintiff cannot establish a prima facie case of retaliation because he cannot show that his termination was causally connected to his alleged request for FMLA leave. Plaintiff was terminated for chronic absenteeism, which pre-dated his alleged FMLA leave requests and about which he had been counseled repeatedly by several of his supervisors.

Finally, even if he could establish a causal connection between his termination and the alleged protected activity under the FMLA, Classic Tulsa has articulated a legitimate, nonretaliatory reason for Plaintiff's termination. As indicated herein, it is undisputed that Plaintiff had a problematic attendance record long before he ever allegedly requested FMLA leave. Such chronic absenteeism was in violation of Classic Tulsa's attendance policies and was specified as a ground for termination in the Employee Handbook. Additionally, Plaintiff failed to adhere to Classic Tulsa's policy regarding requesting FMLA leave. Because Classic Tulsa has articulated a legitimate, nondiscriminatory reason—violation of company policies related to attendance and

leave—for his termination, Plaintiff bears the burden to show that those stated reasons for his termination were pretextual.

Plaintiff cannot show that Classic Tulsa's articulated reasons for Plaintiff's termination were a mere pretext. "A plaintiff typically makes a showing of pretext . . . with evidence that the defendant's stated reason for the adverse employment action was false. . . ." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000). Plaintiff cannot make this showing. Plaintiff admits he had been advised by his supervisors prior to his alleged requests for FMLA leave that his history of absenteeism and tardiness was problematic. Additionally, Plaintiff's termination for excessive absenteeism was in line with Classic Tulsa's policies laid in the Employee Handbook.

Because Plaintiff cannot establish a prima facie for retaliation under the FMLA, such claim fails as a matter of law. Additionally, even if Plaintiff could establish a prima facie case for a retaliation claim, Classic Tulsa has offered legitimate, nondiscriminatory reasons for Plaintiff's termination. Plaintiff has not, and cannot, bear his burden of showing that Classic Tulsa's reasons for terminating him were a mere pretext. Therefore, Plaintiff's retaliation claim fails as a matter of law and Classic Tulsa is entitled to summary judgment on the same.

IV. **CONCLUSION**

**WHEREFORE**, premises considered, Defendant Classic Tulsa, LLC, respectfully requests an Order from this Court granting summary judgment in Classic Tulsa's favor on Plaintiff's interference and retaliation claims under the FMLA. Plaintiff cannot prevail on an interference claim because the undisputed evidence shows that Plaintiff would have been terminated regardless of his alleged requests for FMLA leave due to his failure to adhere to Classic Tulsa's attendance and leave policies. Plaintiff cannot prevail on his retaliation claim because he

cannot prove that Classic Tulsa's legitimate, non-discriminatory reason for termination—chronic absenteeism—was a mere pretext. Therefore, Classic Tulsa is entitled to a judgment in its favor as a matter of law on both of Plaintiff's remaining claims.

Respectfully submitted,

**ATKINSON, HASKINS, NELLIS, BRITTINGHAM, GLADD & FIASCO**
A Professional Corporation

/s/ Carol J. Allen
Jennifer R. Annis #17741
Carol J. Allen, OBA #18255
1500 ParkCentre
525 South Main
Tulsa, OK 74103-4524
Telephone: (918) 582-8877
Facsimile: (918) 585-8096
**Attorneys for Defendant**

## CERTIFICATE OF MAILING

I, the undersigned, hereby certify that on the 28th day of December, 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all registered ECF users.

Daniel E. Smolen, danielsmolen@ssrok.com
Lauren Lambright, laurenlambright@ssrok.com
701 South Cincinnati Avenue
Tulsa, OK 74119
**Attorneys for Plaintiff**

/s/ Carol J. Allen

S:\Files\337\340\Small MSJ.docx