IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SHANE SMALL,

    Plaintiff,

v.                                                                                                  No. 20-cv-00229-WPJ-JFJ

CLASSIC TULSA C, LLC,
a foreign Limited Liability Company,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** comes before the Court[1] upon Defendant Classic Tulsa C, LLC's ("Classic Tulsa") Motion for Summary Judgment, filed December 28, 2020. Doc. 32. Plaintiff Shane Small timely responded (Doc. 38), to which Defendant replied (Doc. 39). This case arose after Classic Tulsa terminated the employment of Plaintiff shortly after he asked to take time off under the Family and Medical Leave Act ("FMLA") to care for an injured family member. Doc. 2, Ex. 1. Having reviewed the parties' briefing and the applicable law, the Court finds Defendant's Motion for Summary Judgment is well-taken and therefore, grants the Motion.

**BACKGROUND**[2]

Plaintiff Shane Small began his at-will employment as a finance director with Defendant Classic Tulsa in May 2017. Doc. 32, at ¶¶ 4–5; Doc. 38, Ex. 3, at 60:12–14 (Small Deposition). His attendance issues began soon after. Some of these absences were due to Plaintiff's reoccurring

---

[1] Chief United States District Court Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

[2] The facts recited below derive from Defendant's Statement of Undisputed Material Facts (Doc. 32) and Plaintiff's Statement of Facts and Additional Facts (Doc. 38). Included within the parties' statements of facts are depositions, company policies, and reports. The following facts are those a reasonable jury could find based on the evidence.

trouble with diverticulitis,³ for which he was hospitalized in December 2017, June 2018, October 2018, and November 2018. Doc. 32, Ex. 4, at 90:8–9, 91:17–18, 92:21–24, 93:1–3 (Small Deposition). Plaintiff attributed various other absences to explanations such as house repairs, a situation where his wife was scammed by someone pretending to be a country singer, a situation where a friend of one of Plaintiff's daughters overdosed on heroin, and a situation where another of Plaintiff's daughters was sexually assaulted. *Id.* at 152:4–7, 152:16–24, 152:25–153:12, 153:17–25. In sum and regardless of reason, Plaintiff "certainly had more than two absences per quarter" during his work with Classic Tulsa. *Id.* at 120:19–25.⁴

Classic Tulsa's absence policy required notice for both planned and unplanned absences. Doc. 32, Ex. 1, at §§ 50–51 (Employee Handbook). The policy also required a time off report form to be completed for any half day or full day absence. *Id.* Employees were required to provide a "doctor's release or excuse" and obtain supervisor approval for illness-related absences. *Id.* at § 53. At one point, Plaintiff's supervisor Adam Brady approved a non-illness related absence by text message and told Plaintiff, "Keep in mind that the reputation you have currently is that you miss a lot of work. Just a thought to be mindful of that in the future, cool?" Doc. 32, Ex. 5. At another point, Brady texted Plaintiff, "Shane, we would like to know ahead of time when you have dr [sic] appointments please, not the morning of when you don't show up." Doc. 32, Ex. 6, at 3. Classic

---

³ Diverticulitis is a medical condition where the lining of an individual's digestive system becomes inflamed or infected, causing "severe abdominal pain, fever, nausea, and a marked change in [the patient's] bowel habits." *Diverticulitis*, Mayo Clinic (April 19, 2022), https://www.mayoclinic.org/diseases-conditions/diverticulitis/symptoms-causes/syc-20371758.

⁴ Specifically, Plaintiff testified that he did not recall or would have to review notes before he could answer counsel's questions regarding whether he was absent from work in May 2017 (five days), June 2017 (three days), September 2017 (five days), October 2017 (nine days), November 2017 (nine days), December 2017 (fifteen days), January 2018 (eleven days), February 2018 (twelve days), March 2018 (five days), April 2018 (six days), May 2018 (seven days), June 2018 (seven days), July 2018 (six days), August 2018 (thirteen days), September 2018 (thirteen days), October 2018 (nine days), November 2018 (sixteen days), and December 2019 (nineteen days). Doc. 32, Ex. 4, at 88:2–93:9. Plaintiff submitted doctors' notes associated with absences in December 2017, August 2018, September 2018, and December 2018. Doc. 38, Ex. 5 (Notes from Plaintiff's Physicians).

2

Tulsa operator/partner Mark Allen testified at a deposition that Plaintiff would be absent without providing notice "so much," describing the situation as "times where, where is Shane? Where is Shane? And no one knew. And then he would come up with a story of some sort explaining where he was." Doc. 38, Ex. 1, at 60:3–12.[5] This affected morale at Classic Tulsa, with other employees working to cover for Plaintiff's chronic absences. *Id.* at 112:11–20.

Plaintiff had surgery for diverticulitis on November 21, 2018. Doc. 32, Ex. 4, at 93:10–13; Doc. 38, Ex. 3, at 135:18–20. Plaintiff was medically cleared to return to work full-time starting on December 17, 2018. Doc. 32, Ex. 8 (Plaintiff's Return to Work). Plaintiff informed Classic Tulsa on December 26, 2018, that he had "several [appointments scheduled] between kidney and gastro and surgeon," but they were scheduled during days off so that they would not interfere with his work. Doc. 38, Ex. 4, at 6. The same day that Plaintiff informed Classic Tulsa of his upcoming doctor appointments, Plaintiff's elderly mother was attacked by a dog and suffered serious injuries, including numerous broken bones in her face and an injury to her eye socket. Doc. 32, Ex. 7, at 2; Doc. 32, Ex. 9; Doc. 38, Ex. 3, at 133:8–134:4.

Plaintiff had at least three conversations with Classic Tulsa employees about FMLA. The first conversation occurred around October 2018, before Plaintiff's surgery. Plaintiff testified that he asked Classic Tulsa employee Pam Palmer "what [he] needed to do to start the process for FMLA because [he] wasn't aware of that, and she didn't know neither [sic]." Doc. 38, Ex. 3, at 100:17–19. Palmer said she would "have to check" with other Classic Tulsa employees, but "never got back with [Plaintiff] on that stuff." *Id.* at 100:19–20, 103:15–17. Plaintiff also inquired about

---

[5] Allen testified that Brady issued four written warning to Plaintiff about his absences. Doc. 38, Ex. 1, at 112: 21–24, 162:20–21. Brady signed a declaration stating he never issued any written warnings to Plaintiff about his absences. Doc. 38, Ex. 2, at ¶ 12 (Brady Declaration). For the reasons explained in the Court's analysis, this disagreement need not be resolved as it does not involve an issue of material fact. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

FMLA in December 2018 in connection with his mother's health emergency. Doc. 32, Ex. 7, at 2, Doc. 38, Ex. 3, at 118:3–19. Plaintiff first talked to Palmer about the necessary paperwork for FMLA. Doc. 38, Ex. 3, at 106:14–16. Palmer told Plaintiff she did not think he needed to complete formal paperwork. Doc. 32, Ex. 7, at 2. Plaintiff had an exchange with Brady where Plaintiff "asked Adam in the office . . . what [he] needed to do to fill out FMLA paperwork, and [Brady] acted like he didn't even know what FMLA was." Doc. 38, Ex. 3, at 106:23–107:1. Brady said he thought Plaintiff was "back" from his diverticulitis surgery and did not respond to Plaintiff's inquiry about taking FMLA to care for his mother. *Id.* at 104:15–20; Doc. 32, Ex. 7, at 2–3.

Plaintiff's employment with Classic Tulsa was formally terminated on January 3, 2019. Doc. 32, Ex. 2 (Termination Report). Plaintiff did not believe at the time that his employment was terminated because of any FMLA conversation. Doc. 32, Ex. 4, at 113:8–11. Instead, he thought his employment was terminated after he advised a customer against returning a car that had been sold by one of Plaintiff's coworkers. *Id.* at 113:11–116:16. Plaintiff's written employee separation report—which was signed by Brady—includes a check-marked box labeled "attendance" under the heading "involuntary termination." Doc. 32, Ex. 2. The separation report also had a handwritten note "reduction in workforce for new year" in a section labeled "additional details regarding termination," although Classic Tulsa did not have a reduction in workforce in January 2019. Doc. 32, Ex. 2; Doc. 38, Ex. 1, at 110:14–25. Brady told Plaintiff that "[he] had done a good job when [he] was there, but [he] had just missed too much" work. Doc. 32, Ex. 4, at 119:23–25.

Classic Tulsa's employee handbook defines "excessive absenteeism" as two or more absences per quarter. Doc. 32, Ex. 1, at § 51. The handbook includes numerous references to possible termination for excessive absenteeism. *Id.* at § 50 ("Absenteeism or tardiness without valid reason and proper notification is cause for termination."), § 52 ("Frequent absenteeism[] and

4

tardiness (excused or unexcused) will convince your supervisor that you are not committed to your job and you will be subject to termination." (emphasis removed)), § 81 ("[T]he following actions are cause for immediate discharge . . . 7. Repeated tardiness, unexcused absence, or abuse of medical leave."). The handbook also included a section on requesting FMLA, which first addressed foreseeable leave (such as birth of a child) and then addressed unforeseen leave:

> In the event of a serious illness to the employee or his/her child, spouse, or parent, creating a need for unforeseen family or medical leave, the employee should provide us with notice, as soon as practicable, of any needed time off, and a written doctor's certificate indicating the expected duration and nature of the illness, particularly as it relates to the employee's ability to come to work or the need for that employee's presence at home to care for a seriously ill family member.

*Id.* at § 56(7).

Following his termination, Plaintiff filed suit in Oklahoma state court on May 4, 2020. Doc. 2, Ex. 1 (State Court Petition). Defendant timely removed the case to this Court on May 26, 2020. Doc. 2.

## **STANDARD**

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts are viewed in the light most favorable to the Plaintiff and the Court will draw all reasonable inferences in his favor. *Hermann v. Salt Lake City Corp.*, 21 F.4th 666, 673 (10th Cir. 2021). Only genuine disputes as to *material* facts preclude summary judgment. *See Alt. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). "A fact is material only if it might affect the outcome of the suit under governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the moving party." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186 (10th Cir. 2016) (internal quotation marks omitted).

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). If the movant carries this initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (internal quotation marks and citations omitted). If the nonmovant demonstrates a genuine dispute as to material facts, the Court views the facts in the light most favorable to him. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). However, a failure of proof "concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## DISCUSSION

The FMLA "guarantees the substantive rights of up to twelve weeks of unpaid leave for eligible employees of covered employers for serious health conditions and reinstatement to the former position or an equivalent one upon return from that leave." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006); *see* 29 U.S.C. § 2612. The Tenth Circuit recognizes two types of FMLA claims: interference and retaliation. *See Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014). These two theories of recovery are separate and distinct theories that differ "in the elements and burdens of proof," and "differ with respect to the timing of the adverse action." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). Plaintiff alleges—and Classic Tulsa seeks summary judgment on—both theories. The Court discusses each in turn.

## I. FMLA Interference

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). To demonstrate a prima facie case of FMLA interference, "an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employer's FMLA rights." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017) (quoting *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012)). An interference, restraint, or denial of FMLA rights is a violation regardless of the employer's intent and the familiar *McDonnell Douglas* burden shifting framework does not apply and no pretext analysis is necessary. *Id.* at 969, 978; *see Metzler*, 464 F.3d at 1180.

However, § 26156(a)(1) is not a strict liability statute and therefore, an "employer can defend against [an FMLA interference] claim . . . by showing that the employee would have been terminated anyway . . . regardless of the request for FMLA leave. *Brown*, 700 F.3d at 1227; *see Metzler*, 464 F.3d at 1180. This is because an "employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1006 (10th Cir. 2011) (internal quotation marks and citations omitted). "[T]o demonstrate that it would have terminated the employee anyway, [an employer] must provide evidence of alternative reasons for termination . . . [which] is so one-sided that submission to a jury is not required." *Brown*, 700 F.3d at 1227.

"[T]iming can be particularly suggestive in determining whether termination relates to the exercise of FMLA rights . . . especially because the employer's intent is irrelevant." *Id.* At the

same time, however, "an indirect causal link between dismissal and an FMLA leave is an inadequate basis of recovery." *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) (internal quotation marks omitted).

> For instance, if an employee's work-performance problems are related to the same illness that gave rise to FMLA leave, the employee may still be terminated on his work-performance problems, regardless of the indirect causal link between FMLA leave and the adverse decision. Likewise, if an employer presents evidence that an employee was dismissed for her failure to comply with the employer's absence-notification policy, this is sufficient to demonstrate the termination was not legally related to the exercise of FMLA leave, even if the employee's absences were caused by a requested medical leave. The employee's request for an FMLA leave does not shelter her from the obligation, which is the same as that of any employee, to comply with the employer's employment policies, including its absence policy.

*Id.* at 1132–33 (cleaned up).

The Court finds *Dalpiaz* instructive. Here, Plaintiff admittedly and repeatedly violated Classic Tulsa's absence policy. Additionally, Plaintiff frequently failed to provide notification to his employer of his anticipated and actual absences. While the Court is sympathetic to the numerous personal challenges Plaintiff described, his FMLA requests do not insulate him from the consequences of his frequent absenteeism. *See Dalpiaz*, 760 F.3d at 1134 (affirming that an indirect link between FMLA entitlement and termination was insufficient to support a theory of interference). A reasonable jury could find that Plaintiff would have been dismissed regardless of his request for FMLA leave. *See id.* Summary judgment is proper.

## II.   FMLA Retaliation

It is also "unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). The *McDonnell Douglas* burden shifting framework applies to Plaintiff's FMLA retaliation claim. *DePaula*, 859 F.3d at 969. Under this framework, a plaintiff has the initial burden on summary judgment of demonstrating a prima facie case of discrimination by a preponderance

of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Tenth Circuit Court of Appeals has explained that "'articulation of the plaintiff's prima facie test might vary somewhat depending on the context of the claim,' [but] '[t]he critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *DePaula*, 859 F.3d at 969–70 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)). In the FMLA context, the test is generally articulated as requiring a plaintiff to show (1) he engaged in protected FMLA activity; (2) his employer took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

Once the plaintiff has made the requisite showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–03. This burden is "'exceedingly light,' as its stated reasons need only be legitimate nondiscriminatory 'on their face.'" *DePaula*, 859 F.3d at 970 (quoting *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 899–900 (10th Cir. 2017) and *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011)). If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely "pretextual." *McDonnell Douglas*, 411 U.S. at 804–05.

"The plaintiff bears the ultimate burden of persuasion to show discrimination" at this third stage and must demonstrate pretext by showing "the proffered reason is factually false," the "discrimination was a primary factor in the employer's decision," or "the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making

9

the adverse employment decision affecting the plaintiff." *DePaula*, 859 F.3d at 969–70 (internal quotation marks and citations omitted). Pretext is often shown "'by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.'" *Id.* (quoting *Tabor v. Hilti, Inc.*, 704 F.3d 1206, 1216 (10th Cir. 2013)). At the same time, however, the Court "may not second guess the business judgment of the employer." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (internal quotation marks omitted). "Instead of asking whether the employer's reasons 'were wise, fair, or correct,' the relevant inquiry is whether the employer 'honestly believed those reasons and acted in good faith upon those beliefs.'" *DePaula*, 859 F.3d at 971 (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007)).

As discussed, Classic Tulsa's proffered nondiscriminatory reason for terminating Plaintiff's employment—absenteeism—is legitimate. The Court must next consider whether Plaintiff has adduced enough evidence to create a materially factual issue regarding whether that legitimate nondiscriminatory reason was pretextual. Plaintiff points to three inconsistencies or contradictions in Classic Tulsa's evidence: temporal proximity; contradictions between Allen's and Brady's testimony; and the handwritten reference to a reduction in force on Plaintiff's termination paperwork. Doc. 38, at 15. None is persuasive. First, "temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext." *DePaula*, 859 F.3d at 976 (collecting cases). Second, while Allen and Brady testified to different recollections of whether Plaintiff was formally disciplined for his absenteeism before his termination, Classic Tulsa's attendance policy does not require formal write-ups before termination for excessive absenteeism. Neither Allen nor Brady disputes—and for that matter, Plaintiff admits—he was frequently absent.

Third, it is true that the handwritten note regarding a reduction in force refers to a factually false circumstance. However, this one unexplained reference is insufficient to discredit Classic Tulsa to create a genuine issue of material fact regarding pretext, especially since the untrue "reduction in workforce" was not "a primary factor in the employer's decision" nor the proffered reason for termination. *See DePaula*, 859 F.3d at 969–70. It is especially insufficient since a reasonable jury could find that all the parties admit that Plaintiff demonstrated excessive absenteeism, Classic Tulsa's written company policy specifically and repeatedly warned that excessive absenteeism was cause for termination, Brady verbally informed Plaintiff he was terminated for excessive absenteeism, and Plaintiff's employee separation report indicated attendance as the reason for termination. Because Plaintiff has not demonstrated that a reasonable jury could find he has met his burden of persuasion on discrimination, summary judgment is proper.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Classic Tulsa's Motion for Summary Judgment (Doc. 32) is **GRANTED**.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE